1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   KYLE BRAGER,                          No.  2:19-cv-00044-MCE-KJN

12                 Plaintiff,

13        v.                               **MEMORANDUM AND ORDER**

14   COSTCO WHOLESALE
     CORPORATION, a corporation; and
15   DOES 1-25, inclusive,

16                 Defendants.

17

18        Through this action, Plaintiff Kyle Brager ("Plaintiff" or "Brager") seeks to recover

19   damages from his former employer, Defendant Costco Wholesale Corporation

20   ("Defendant" or "Costco"), for sexual orientation harassment (hostile work environment);

21   disability discrimination; failure to accommodate; failure to engage in interactive process;

22   failure to prevent discrimination, harassment and retaliation; retaliation; and wrongful

23   termination.  See Complaint, ECF No. 1, Ex. 1.  Presently before the Court is

24   Defendant's Motion for Summary Judgment, or in the Alternative, Summary Adjudication

25   brought pursuant to Federal Rule of Civil Procedure 56 (ECF No. 8) ("Motion").  For the

26   reasons that follow, Defendant's Motion is GRANTED in part and DENIED in part.[1]

27   _____

28        [1] Because oral argument would not have been of material assistance, the Court ordered this
     matter submitted on the briefs.  ECF No. 9; see E.D. Cal. Local Rule 230(g).

1

**BACKGROUND**[2]

2

3      Plaintiff was employed by Costco from August 2005 through his involuntary

4   termination on or about December 7, 2016.  He worked as a front-end supervisor at

5   Defendant's Manteca warehouse at the time of his termination.  Plaintiff's employment

6   was covered by Costco's Employee Agreement, which includes a Family and Medical

7   Leaves of Absence ("LOA") Policy.  The policy is distributed when updated every three

8   years, and Plaintiff acknowledged receipt of the Agreement throughout his employment.

9   In relevant part, the LOA informs employees that they must submit appropriate

10   paperwork to have their leave approved and that providing false information in

11   connection with a leave request may subject the employee to discipline up to

12   termination.

13      Plaintiff openly identifies as a gay man.  Plaintiff alleges that starting in 2015,

14   fellow employee Clayton Sanford ("Sanford") began subjecting Plaintiff to harassment

15   related to his sexual orientation (e.g., homophobic epithets).  Plaintiff alerted various

16   managers of this conduct throughout his employment and, while those managers

17   indicated they would take steps to redress Sanford's offensive behavior, Plaintiff claims

18   they ultimately took no action to prevent it.

19      By July 2016, Plaintiff, who already suffered from depression and anxiety, claims

20   those disabilities were exacerbated by Sanford's ongoing harassment.  He requested

21   medical leave and provided medical documentation to Defendant from his healthcare

22   provider, Dr. Abdul Khan ("Dr. Khan").  In September 2016, Plaintiff returned to work full-

23   time, but alleges that upon his return the sexual orientation harassment recommenced

24   and that Defendant's management continued to do nothing to stop Sanford's behavior.

25      In October 2016, Brager requested more time off, which Defendant granted, with

26   Plaintiff again supplying documentation from Dr. Khan listing him as "totally

27

28      [2] The facts are assembled from the Complaint (ECF No. 1) and Plaintiff's Response to
Defendant's Separate Statement of Undisputed Facts (ECF No. 10-1), unless otherwise stated.

incapacitated."  Defendant avers that, at the time of this request, the Manteca

Warehouse's General Manager, Eugene Laughery ("Laughery"), began to doubt the

authenticity of the medical notes because Brager was supplying copies of the excuses

instead of original documents.  Additionally, Brager was bringing the notes after the time

off when the threat of discipline for unexcused absences was looming.  Given those

concerns, Laughery reached out to Costco's third-party leave administrator, WorkCare,

for guidance.  In turn, WorkCare contacted Dr. Khan's office to ask about four specific

notes submitted by Brager.  All from 2016, the notes were dated July 7, July 30,

September 9, and October 20.  Dr. Khan's office faxed a response to WorkCare stating

that the July 7 and October 20 notes were valid, but the July 30 and September 9 notes

were invalid.

Upon receiving this news from WorkCare, Laughery confronted Brager about the

potentially fraudulent notes.  Brager responded (as he continues to do) that the notes

were authentic and had been received from an assistant to Dr. Khan.  Laughery

requested additional documentation from Brager to prove the notes were real, giving him

a deadline of November 30, 2016.  When Brager provided no such documentation,

Laughery suspended him.  With the suspension, Laughery instructed Brager to return on

December 7, 2016, to meet with Assistant General Manager Rick Malfatti ("Malfatti"),

and to bring documentation from Dr. Khan's office supporting the contested absences.

Laughery instructed Brager to meet Malfatti because Laughery had a scheduled meeting

outside of the warehouse on that day.

On December 7, 2016, Brager met Malfatti and presented a December 7, 2016,

note from Dr. Khan's office purportedly certifying all previous absences, including those

contested.  Malfatti states that he took a picture of the document and sent it to Laughery.

Laughery determined that the note was practically identical to those already submitted of

questionable authenticity and again appeared to be only a copy.  Because Brager failed

to bring in original documentation, Laughery instructed Malfatti to terminate Plaintiff

///

3

1    using a form that Laughery prepared and signed the day before (December 6, 2016) in

2    anticipation of that eventuality.[3]

3          The next day, Brager contacted a person with whom he had previous contact from

4    Costco's corporate human resources, Jonathan Shue, claiming that all of the notes were

5    authentic.  Accordingly, Defendant directed WorkCare to again contact Dr. Khan's office.

6    On December 12, 2016, Dr. Khan's office responded that the December 7, 2016, note

7    that authorized all of the above absences <u>was</u> valid, despite what the office previously

8    told WorkCare.  In light of this information, Costco corporate managers directed

9    Laughery to <u>reinstate</u> Brager.  Laughery claims he attempted to call Brager twice to offer

10    his position back, but Brager never answered.

11          On December 14, 2016, WorkCare contacted Costco to state that Dr. Khan's

12    office called with new information.  While their previous reversal was based on reference

13    to the office's  internal electronic filing system, Dr. Khan's staff ultimately spoke directly

14    to the doctor himself.  Dr. Khan clarified that on December 7, 2016, Brager requested

15    that the doctor authorize his absences related to the July 30 and September 9 notes, but

16    Dr. Khan <u>refused</u> to do so.  Despite this rejection, Brager told one of the office clerks that

17    Dr. Khan had authorized the absences, and in reliance on that misrepresentation the

18    clerk generated the December 7 note in response.  Dr. Khan's office further confirmed

19    that the July 30 and September 9 notes were inauthentic and possibly forged.  At

20    deposition, Dr. Khan confirmed that his office discontinued professional services with

21    Brager related to these events.  With this reversal from Dr. Khan's office, Costco again

22    changed course and determined that it would not reinstate Brager.[4]

23    ///

24

25          [3] John McKay, Executive Vice President, approved the termination.  <u>See</u> Declaration of Eugene Laughery, ECF No. 8-3, ¶ 8.

26          [4] For its part, Defendant acknowledges that Plaintiff reported discriminatory comments to management on multiple occasions.  Defendant further admits that Plaintiff requested medical leave

27    throughout his employment.  However, Defendant asserts that Brager admitted at deposition that no one at Costco knew about his disabilities of depression and anxiety other than himself and Andrea Young, a payroll clerk with no managerial responsibilities.  Finally, Defendant avers that the decision-maker behind

28    Brager's termination, Laughery, was unaware of Brager's disabilities and harassment complaints.

On December 5, 2017, just under a year following his termination, Brager filed a Department of Fair Employment and Housing ("DFEH") charge against Costco and received an immediate right-to-sue notice.  Plaintiff subsequently filed a lawsuit against Defendant in the San Joaquin County Superior Court on December 4, 2018, and that action was removed by Costco to this Court on diversity of citizenship grounds pursuant to 28 U.S.C. § 1441(a).

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact."  Id. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

1   Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

2   judgment standard to motion for summary adjudication).

3         In attempting to establish the existence or non-existence of a genuine factual

4   dispute, the party must support its assertion by "citing to particular parts of materials in

5   the record . . . ; or showing that the materials cited do not establish the absence or

6   presence of a genuine dispute, or that an adverse party cannot produce admissible

7   evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must

8   demonstrate that the fact in contention is material, i.e., a fact that might affect the

9   outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S.

10   242, 248, 251-52 (1986). The opposing party must also demonstrate that the dispute

11   about a material fact "is 'genuine,' that is, [] the evidence is such that a reasonable jury

12   could return a verdict for the nonmoving party." Id. at 248. In other words, the judge

13   needs to answer the preliminary question before the evidence is left to the jury of "not

14   whether there is literally no evidence, but whether there is any upon which a jury could

15   properly proceed to find a verdict for the party producing it, upon whom the onus of proof

16   is imposed." Id. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871))

17   (emphasis original). As the Supreme Court explained: "When the moving party has

18   carried its burden under Rule [56(a)], its opponent must do more than simply show that

19   there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

20   Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to

21   find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587 (citing First

22   Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

23         In resolving a summary judgment motion, the evidence of the opposing party is to

24   be believed, and all reasonable inferences that may be drawn from the facts placed

25   before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at

26   255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

27   obligation to produce a factual predicate from which the inference may be drawn.

28   ///

6

1    Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

2    810 F.2d 898 (9th Cir. 1987).

3

4                                        **ANALYSIS**

5

6    **A.      Plaintiff's Sexual Orientation Harassment Claim Survives**

7                **1.      The Claim Is Not Time-Barred**

8         "The statute of limitations under the Fair Employment and Housing Act ('FEHA')

9    provides that actions alleging FEHA violations must be brought within one year from the

10   date upon which the alleged unlawful practice or refusal to cooperate occurred."

11   Sanchez v. Loews Hotels Holding Corp., No. 19-CV-02084 W (MDD), 2021 WL 424288,

12   at *3 (S.D. Cal. Feb. 8, 2021) (citing Cal. Gov't Code § 12960) (internal quotation marks

13   omitted).  The parties agree that there is an exception to FEHA's limitation period under

14   the so-called "continuing violation doctrine."  Compare Mot. at 10, with Opp'n at 6.  For

15   the doctrine to apply, Plaintiff must establish: "(1) the conduct occurring within the

16   limitations period is similar in kind to the conduct that falls outside the period; (2) the

17   conduct was reasonably frequent; and (3) the conduct had not yet acquired a degree of

18   permanence."  Richards v. CH2M Hill, Inc., 26 Cal. 4th 798, 802 (2001).

19        Costco contends that because Brager did not file his DFEH charge "until

20   December 5, 2017, the relevant period for his sexual orientation harassment claim dates

21   back to December 5, 2016.  Any events that transpired prior to that date are time-barred

22   and not actionable."  Mot. at 10.  Defendant insists that Plaintiff fails the continuing

23   violation test because the claim obtained a degree of permanence – i.e., he fails prong

24   three.  Id. (citing Maridon v. Comcast Cable Commc'ns Mgmt., LLC, No. C-12-2109

25   EMC, 2013 WL 1786592, at *11 (N.D. Cal. Apr. 25, 2013); Morgan v. Regents of Univ. of

26   California, 88 Cal. App. 4th 52, 65 (2000)).  This is because, according to Defendant, the

27   alleged harassment continued to the point where Plaintiff became hopeless that

28   continued complaints would relieve him of Sanford's taunts.  Mot. at 11.  Once Plaintiff

                                              7

determined that such efforts were futile – which Defendant avers occurred in 2015 – the statute of limitations began to run, and Brager should have exercised his legal rights in that timeframe.  Id.  As relevant here, the Richards Court recognized  that "the statute of limitations begins to run . . . when the employee is on notice that further efforts to end the unlawful conduct will be in vain."  Richards, 26 Cal. 4th at 823.

Plaintiff responds that the requisite permanence was never present.  He further claims, at the very least, that whether permanence had been reached raises a triable issue of fact not amenable to disposition on summary judgment.  Reply at 6-8 (citing Brome v. California Highway Patrol, 44 Cal. App. 5th 786 (2020); Blue Fountain Pools & Spas, Inc. v. Superior Court, 53 Cal. App. 5th 239 (2020)).  This is because Brager did not form the belief that Costco supervisors would refuse to intervene, "but rather that Sanford was such an inveterate abuser he would continue his misconduct anyway."  Opp'n at 8.

In Richards, the California Supreme Court explained:

> [C]onsistent with our case law and with the statutory objectives of the FEHA, we further hold that "permanence" in the context of an ongoing process of accommodation of disability, or ongoing disability harassment, should properly be understood to mean the following: that an employer's statements and actions make clear to a reasonable employee that any further efforts at informal conciliation to obtain reasonable accommodation or end harassment will be futile.

26 Cal. 4th at 823 (emphasis added).  This requires the employer to make "clear to the employee in a definitive manner that it will not be granting any such" relief from harassment to commence the running of the statute of limitations.  Id. at 823-24 (emphasis added).

"The cases finding prior courses of discriminatory conduct had reached permanence involved plaintiffs who had pursued formal grievance procedures and been denied relief."  Blue Fountain Pools & Spas Inc., 53 Cal. App. 5th at 253 (collecting cases).  In Blue Fountain Pools (a case of different consequence to the respective parties here), the aggrieved party made complaints that were "ineffectual," but the

1    plaintiff believed that her supervisor took them seriously despite the continuing

2    harassment.  Id. at 254.  Similar to the instant matter, the employee started to form

3    beliefs that complaining was having no effect because the abuser was going to continue

4    the harassment regardless.  See id.; cf. Opp'n at 8.  The court nonetheless refused to

5    find as a matter of law that this created permanence, instead finding that was an issue

6    "for the jury to decide."  Blue Fountain Pools & Spas Inc., 53 Cal. App. 5th at 255.

7         In Brome, another case whose import is contested by the parties, the court held

8    that there was no permanence as a matter of law when, despite years of alleged

9    harassment, the employer's words and actions "could support a conclusion that the

10   situation was not futile."  44 Cal. App. 5th at 800.  "At no time did Brome's superiors

11   indicate they had reached an impasse, they were rejecting his concerns, or that he

12   should leave or give up. Instead, they consistently told him they would look into and

13   address his concerns."  Id.  The court concluded: "While it is possible that a jury could

14   conclude the situation was objectively futile, that is not the only conclusion supported by

15   the record."  Id. at 800-01.

16        In the instant matter, in determining whether Plaintiff can show the existence of a

17   continuing violation, this Court must consider the definitive actions of the employer,

18   Costco.  See Richards, 26 Cal. 4th at 823-24.  The record does not demonstrate that

19   Defendant had taken, as a matter of law, unambiguous actions to place Plaintiff on

20   notice that litigation was his only possibility of relief.  Cf. Willis v. City of Carlsbad,

21   48 Cal. App. 5th 1104, 1127-28 (2020) (defendant city's repeated denials of transfers

22   and promotions constituted definitive acts and thus created permanence).  In fact,

23   Plaintiff was contacting human resources personnel only months before his termination

24   with a belief that his disciplinary troubles were part of an ongoing effort of retaliation and

25   harassment.  See Opp'n, Exs. D, E.  Such petitions for assistance would be illogical if

26   Plaintiff believed them to be in vain.  Finally, any feelings of hopelessness that Sanford

27   would continue to harass him regardless of how the company reacted are not sufficient,

28   ///

1  standing alone, to defeat the continuing violations prong.  See Blue Fountain Pools &

2  Spas Inc., 53 Cal. App. 5th at 255.

3    Thus, Plaintiff has adequately demonstrated that a triable issue of fact exists as to

4  whether Brager believed that attempts at internal resolution through Defendant's

5  channels would be futile.  See Romano v. Rockwell Internat., Inc., 14 Cal. 4th 479, 494

6  (1996) ("[T]he limitations period set out in the FEHA should be interpreted so as to

7  promote the resolution of potentially meritorious claims on the merits."); Cal. Gov't Code

8  § 12993(a).  Consequently, Defendant's attempt to limit any actionable conduct to

9  events occurring not more than one year before Plaintiff filed his FEHA complaint

10  necessarily fails, and in now proceeding to analyze the merit of Plaintiff's sexual

11  orientation harassment claim the Court considers the entirety of the harassment he

12  identifies.

13      **2.**  **Plaintiff Offers Triable Issues of Fact as to Sexual Orientation**
         **Harassment**

14

15    Defendant acknowledges that Plaintiff must plausibly allege harassment so

16  severe or pervasive that it created an abusive work environment.  See Lyle v. Warner

17  Brothers Television Productions, 38 Cal. 4th 264, 279 (2006).  Courts may weigh, among

18  other considerations, the frequency and severity of, and injury from, the harassment.  Id.

19  Isolated, sporadic, or trivial incidents will not suffice.  Id.

20    Plaintiff's alleged continued harassment from Sanford meets and exceeds these

21  requirements.  See Compl. ¶¶ 18, 41 (cataloguing the epithets to which Plaintiff was

22  regularly subjected).  Accordingly, Plaintiff's second cause of action for sexual

23  orientation harassment survives, and Defendant's Motion is DENIED as to this claim.

24    **B.**  **Plaintiff's Discrimination Claim Fails as a Matter of Law**

25      **1.**  **Defendant May Have Held Knowledge of Plaintiff's Disability**

26    Courts recognize that a prima facie case of disability discrimination can be

27  established in two ways.  First, a plaintiff may make the requisite showing through direct

28  evidence.  Recognizing, however, that such "direct evidence of intentional discrimination

is rare," California courts have also adopted the so-called McDonnell Douglas test for situations when claims must "be provided circumstantially." Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). That test "places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims . . . ." Id. To establish a prima facie case of disability discrimination, a plaintiff must demonstrate that: (1) he suffered from a disability; (2) he was performing competently in the position he held; and (3) he suffered an adverse employment action as a result of his disability. See id. at 355. If the plaintiff establishes a prima facie case, this creates a rebuttable presumption of discrimination. Id. The burden then shifts to the employer to demonstrate a "legitimate, nondiscriminatory reason" for the employment action. Id. at 356. If the employer meets the burden, a plaintiff may "attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." Id. at 356.

One California appellate court, reviewing Guz, recently held that in the context of a summary judgment motion for an employer, an employer may proceed to step two of the McDonnell Douglas analysis to offer credible, non-discriminatory reasons for terminating an employee. Arnold v. Dignity Health, 53 Cal. App. 5th 412, 425 (2020) (citing Guz, 24 Cal. 4th at 357). This transitioned the burden to the plaintiff "to rebut this facially dispositive showing by pointing to evidence which nonetheless raises a rational inference that intentional discrimination occurred." Id. (citing Guz, 24 Cal. 4th at 357). "[S]ummary judgment for the employer may thus be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred." Id. at 426. (citing Guz, 24 Cal. 4th at 362).

As indicated above, the McDonnel Douglas test does not apply when "plaintiff presents direct evidence of discrimination." Glynn v. Superior Ct., 42 Cal. App. 5th 47,

1   53 (2019).  Therefore, there is a "threshold issue" in disability discrimination cases of

2   "whether there is direct evidence that the motive for the employer's conduct was related

3   to the employee's physical or mental condition."  Id. (quoting Wallace v. County of

4   Stanislaus, 245 Cal. App. 4th 109, 123 (2016)).  A plaintiff may establish this employer

5   intent by proving:

> (1) the employer knew that plaintiff had a physical condition that limited a major life activity, or perceived him to have such a condition, and (2) the plaintiff's actual or perceived physical condition was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action.

10   Id. (quoting Wallace, 245 Cal. App. 4th at 129).

11          Defendant avers that the McDonnel Douglas / Guz burden-shifting approach

12   applies.  Mot. at 12.  Defendant believes that there is no prima facie case for

13   discrimination because Plaintiff lacks evidence of a causal link between his alleged

14   disabilities and termination.  Mot. at 12.  This is supported, according to Costco, by

15   Laughery's deposition testimony that he had no knowledge of Brager's disability.

16   Defendant further claims that Laughery's belief in that respect is reinforced by Plaintiff's

17   own testimony that none of Defendant's personnel, besides a single payroll clerk, knew

18   about the anxiety and depression he experienced.  Mot. at 12.

19          Plaintiff, on the other hand, counters that Glynn is applicable because there is

20   "direct evidence of discrimination in this case."  Opp'n at 9.  This is because Laughery

21   knew that Brager suffered from a disability, regardless of his deposition testimony to the

22   contrary.  Opp'n at 10.  Plaintiff points to his own doctor notes given to Laughery with

23   "DISABILITY CERTIFICATE" at the top that stated "totally incapacitated" in the text.

24   Opp'n at 10.  Plaintiff further insists that Laughery essentially admitted during deposition

25   to recognizing that Brager had a disability related to his time off.  See Opp'n at 10.

26   Finally, Plaintiff asserts that John McKay, the Executive Vice President, also played a

27   role in Brager's termination, and Defendant offers no evidence as to his knowledge.

28   ///

In response to Plaintiff's observation about the medical notes, Defendant cites King v. Permanente Med. Grp., Inc. for the proposition that "[a]n employee's vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the FEHA."  Reply at 5 (quoting No. CIV. 2:13-01560 WBS, 2013 WL 5305907, at *7 (E.D. Cal. Sept. 19, 2013)); see Avila v. Cont'l Airlines, Inc., 165 Cal. App. 4th 1237, 1249 (2008), as modified (holding that an employer's mere knowledge of health problems does not necessarily rise to awareness of a qualifying disability).  In King, the plaintiff took sick leave on three occasions for an unspecified illness, but the court found this merely alerted the employer to health problems, not a disability.  King, 2:13-01560 WBS, 2013 WL 5305907, at *7.  Regarding doctor notes submitted by the plaintiff, the court found that these notes contained insufficient information to put her employer on notice of disability because the proffered content of the notes was that the plaintiff merely could not work.  Id. at *8.

These cases are distinguishable.  In the instant matter, it is clear that Dr. Khan's notes would put a reasonable observer on notice of the existence of a disability.  Opp'n, Ex. F.  While the specific disability was unclear from the note, it is at least a triable issue of fact whether Laughery had knowledge that Brager had a disability that left him "totally incapacitated" and in need of accommodation on occasion.  See Opp'n, Ex. F; see also generally Motion, Ex. D (Deposition of Eugene Laughery), at 26-27.  Thus, Plaintiff's claim does not immediately fail as a matter of law because there are triable issues of fact as to whether or not Costco knew that Brager suffered a disability.

However, the inquiry does not end here.  First, while Plaintiff has created sufficient doubt as to Laughery's knowledge of a disability, this is not direct evidence of discrimination as envisioned by the Glynn Court.  In Glynn, the plaintiff was terminated — possibly in good faith and with a lack of animus — because the employer "mistakenly believed he was totally disabled and unable to work." 42 Cal. App. 5th at 54.  Glynn relies heavily on Wallace, where the plaintiff similarly was removed for the mistaken belief that he could not perform his job safely even with reasonable accommodation.

1  See id. at 53 (citing Wallace v. County of Stanislaus, 245 Cal. App. 4th 109, 115 (2016)).

2  No such circumstances exist in the instant matter.  This is not a case where Costco

3  terminated Brager under the mistaken belief that while he was disabled, he could not

4  perform his duties even with accommodation.  Accordingly, the Guz / McDonnel Douglas

5  approach for establishing circumstantial, as opposed to direct, discrimination remains

6  most on point.  Returning to the McDonnell-Douglas test, the Court next considers

7  Costco's proffered reason for termination.

8             **2.**      **Defendant Offers a Legitimate, Non-discriminatory Basis for**

9                        **Termination**

10        If the plaintiff establishes a prima facie case, this creates a rebuttable

11  presumption of discrimination.  Guz, 24 Cal. 4th at 354.  The burden then shifts to the

12  employer to demonstrate a "legitimate, nondiscriminatory reason" for the employment

13  action.  Id. at 356.  "A reason is legitimate if it is facially unrelated to prohibited bias, and

14  which if true, would thus preclude a finding of discrimination."  Reid v. Google, Inc.,

15  50 Cal. 4th 512, 520 n.2 (2010) (quoting Guz, 24 Cal. 4th at 358) (internal quotation

16  marks omitted).  The employer "need not persuade the court that it was actually

17  motivated by the proffered reasons."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510

18  (1993) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)).

19        Defendant offers: "Costco's reason for terminating Brager's employment is both

20  undisputed and plainly lawful: Brager was found to have violated Costco's Leave of

21  Absence Policy by submitting falsified doctor's notes to support his absences between

22  July 30, 2016 and August 7, 2016[,] and between September 9, 2016[,] and September

23  19, 2016."  Mot. at 13.  As an initial matter, this Court is uncertain that the reason for

24  Brager's termination is "undisputed" – it seems that such a "dispute" is the basis for this

25  entire controversy.  Defendant then offers the doubtful assertion that "[a]s a matter of

26  law, there can be no unlawful conduct when an employer interprets or applies its own

27  policies or rules, even if an employee disagrees with the employer's decision."  Mot.

28  at 12.  Neither case offered by Defendant provides such carte blanche employment

1    decisions to employers who happen to have written policies in place.  Cf. Arteaga v.

2    Brink's, Inc., 163 Cal. App. 4th 327, 344 (2008) ("The employer may fire an employee for

3    a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all,

4    as long as its action is not for a discriminatory reason . . . .") (emphasis added).

5          With that said, if Defendant held an honest belief that it was firing Brager for non-

6    discriminatory reasons, even if not objectively true, then Costco will meet its burden of a

7    legitimate termination decision.  See Picazo v. Randstad US, LP, No. 5:16-CV-06644-

8    HRL, 2018 WL 1510246, at *8 (N.D. Cal. Mar. 27, 2018).  In other words, if Laughery in

9    good faith believed he was terminating Brager for providing false medical documentation

10   from Dr. Khan in violation of the LOA policy — and only for that reason — then Costco

11   shifts the burden back to Brager.

12         Laughery's Declaration states that he observed Brager's medical notes were

13   consistently brought in after the work absence, and Brager was supplying copies of the

14   notes instead of originals, leading the manager to question the notes' authenticity.  Mot.,

15   Declaration of Eugene Laughery, ¶ 3 ("Laughery Declaration").  Laughery then contacted

16   Costco's third-party leave administrator, which contacted Dr. Khan's office directly and

17   confirmed that two of the four notes in question were not authorized.  Id. ¶ 4.  Laughery

18   confronted Brager, who insisted the notes were real, and gave him approximately a

19   week to provide additional documentation as to their authenticity.  Id. ¶ 5.  When Brager

20   failed to bring such documentation, Laughery suspended him and demanded proof from

21   Dr. Khan's office that the notes in question were authentic when Plaintiff returned from

22   suspension.  Id. ¶¶ 6-7.  When Brager returned on December 7, 2016, with

23   documentation that appeared essentially the same as the suspicious notes, Laughery

24   made the call to fire him.[5]  Id. ¶¶ 9-10.

25   ///

26

27         [5] Laughery had received prior authorization to do so from John McKay, Executive Vice President.
     Id. ¶ 8.  Laughery was not physically present for the firing due to a prior engagement, but he directed
28   Assistant General Manager Rick Malfatti to terminate him after reviewing the suspicious documentation.
     Id. ¶¶ 9-10.

1    Based on the foregoing, Defendant has met its burden of demonstrating that

2  Laughery had a legitimate, non-discriminatory reason for firing Brager.  Plaintiff was on

3  clear notice that providing "false or misleading information in connection with [his] leave

4  of absence" would subject him to discipline up to termination.  Mot., Ex. A (Employee

5  Agreement).  The decision to terminate Plaintiff was based on an independent

6  investigation from Costco's third-party leave administrator, which told Costco that at least

7  two of Brager's notes ostensibly from Dr. Khan were inauthentic and possibly forged.

8  See Mot., Exs. B, F (Declaration of Linda Smith); Laughery Declaration, ¶¶ 4, 12.[6]

9    Although irrelevant to Laughery's contemporaneous knowledge, the credibility of

10  the decision is bolstered by later deposition testimony where Dr. Khan confirmed that he

11  refused Brager's request to authorize at least two of Plaintiff's absences (Mot., Ex. C,

12  Deposition of Abdul W. Khan, M.D. ("Khan Deposition"), at 17:12-24), and that

13  Dr. Khan's office determined that Brager had forged the authorization letters.  Id. at

14  19:24-25.  This led to Brager's dismissal as Dr. Khan's patient.  Id. at 19:24-25.  Under

15  such circumstances, the decision to terminate Brager was facially unrelated to prohibited

16  bias.  Cf. Velasquez v. Constellation Brands US Operations, Inc., No. 1:18-CV-00364-

17  SAB, 2019 WL 2642510, at *12 (E.D. Cal. June 27, 2019) (finding the plaintiff's multiple

18  unexcused absences, violation of company policy, and falsification of internal forms

19  sufficient as legitimate non-discriminatory reasons for termination); English v. Estes

20  Express Lines, No. 5:16-CV-01353-CAS (SKx), 2017 WL 5633037, at *12 (C.D. Cal.

21  Nov. 21, 2017) (employee's repeated workplace violations provided sufficient legitimate,

22  non-discriminatory reason for termination).

23  ///

24  ///

25  ///

26

27    [6] As discussed supra, there was some confusion from WorkCare as to how many of the notes
28  were inauthentic.  Ultimately, it determined that at least two of the notes were likely forged.  See Mot.
    at 4-8.

### 3. Plaintiff Fails to Demonstrate that Defendant's Termination Justification Was Pretextual

"Once an employer has articulated a legitimate, non-discriminatory business reason for terminating an employee, the burden shifts to the employee to provide substantial, responsive and admissible evidence that the employer's stated reason is a pretext and that the true reason for the termination was illegal discrimination." Faust v. California Portland Cement Co., 150 Cal. App. 4th 864, 875 (2007). "Pretext may be demonstrated by showing that the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge." Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 224 (1999) (internal quotation marks and citation omitted). "Pretext may be inferred from the timing of the discharge decision, the identity of the decision-maker, or by the discharged employee's job performance before termination." Id. However, "[w]hen evidence of pretext is circumstantial, rather than direct, the plaintiff must produce specific and substantial facts to create a triable issue of pretext." Washington, 871 F. Supp. 2d at 1026 (quoting Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011)) (internal quotation marks omitted).

Defendant avers that "Brager has no evidence of a causal link, let alone specific, substantial evidence of pretext." Mot. at 14. Defendant insists this is a "rare case where the undisputed evidence affirmatively shows the absence of pretext." Mot. at 15. This is because for a brief period Costco decided to reinstate Brager when it received information from Dr. Khan's office that Dr. Khan did approve Plaintiff's absences on the dates in question. Mot. at 15. It wasn't until December 14, 2016 – when Costco's third-party administrator told Defendant that Dr. Khan's office contacted them to clarify that Dr. Khan did not authorize Brager's absences on the contested dates – that Defendant elected not to reinstate Brager. Id.

Plaintiff responds that Costco is providing "shifting and contradictory reasons for the termination." Opp'n at 11. Plaintiff points to the fact that Laughery had already

1   signed the termination form the day before (December 6) the actual termination

2   (December 7), and notes that the termination form lists four reasons for the termination,

3   "three of which were inapplicable and contradictory." Id. at 12.  Plaintiff further attacks

4   Dr. Khan's "flip-flopping" on the contested absences, suggesting that a reasonable jury

5   could "believe that Dr. Khan and his record keeping were entirely at fault for the

6   discrepancies and that Brager did not submit falsified medical leave forms." Id. at 12.[7]

7        Brager fails to demonstrate that Costco's proffered termination reasoning has no

8   basis in fact, did not motivate the discharge, or was insufficient to explain the

9   termination. See Hanson, 74 Cal. App. 4th at 224.  There is simply no question that an

10  employee providing forged medical notes would logically motivate an employer to

11  terminate that employee — a termination unrelated to discriminatory animus.  The fact

12  that Costco's LOA policy directly addressed such a scenario only bolsters this finding.

13  Additionally, Defendant's decision to reverse itself upon the short-lived belief that

14  Dr. Khan did authorize the notes affirms that the forged medical notes were the impetus

15  for the termination.  That Laughery signed the termination form the day before is

16  inconsequential, as Laughery was not at the warehouse and did not make the actual

17  termination decision until December 7, 2016, when he heard from Malfatti.  See Reply,

18  Ex. A, Supplemental Declaration of Eugene Laughery, ¶¶ 4-5.

19       "[A]n employer would be entitled to judgment as a matter of law . . . if the plaintiff

20  created only a weak issue of fact as to whether the employer's reason was untrue and

21  there was abundant and uncontroverted independent evidence that no discrimination

22  had occurred." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 148 (2000).

23  This is such an occasion.  The Employee Counseling Notice provided to Brager pre-

24  termination did not contain four contradictory reasons for the suspension that eventually

25  became a termination — the reasons were consistent as to the good faith belief that

26  Plaintiff provided false documentation for his absences in violation of Costco's internal

27  _____

28       [7] Plaintiff additionally states that Costco admitted that Brager's leave was authorized two months after termination when it denied terminating Brager and claimed he voluntarily quit when he applied for unemployment benefits.  Opp'n at 13.  This is irrelevant to the instant Motion and is not discussed further.

1  policy.  <u>See</u> Motion, Ex. D, Employee Counseling Notice; <u>Faust v. California Portland</u>

2  <u>Cement Co.</u>, 150 Cal. App. 4th 864, 875 (2007) ("Plaintiff cannot deny that Defendant

3  acted exactly as it had promised him it would act if he ignored the April 8, 2003[,]

4  letter.").

5       Finally, it is not the place of the courts to empanel a jury to determine the efficacy

6  of Dr. Khan's record-keeping.  <u>Cf.</u> Opp'n at 12.  First, Dr. Khan's deposition testimony

7  reveals Dr. Khan's affirmative belief that he did <u>not</u> authorize Brager's contested

8  absences, and that he terminated Brager as a patient.  <u>See generally</u> Khan Deposition

9  at 14-19.  Second, even on the remote chance this entire controversy could be blamed

10  on Dr. Khan's errant record-keeping, it is irrelevant because Costco made its termination

11  decision on the good faith, non-discriminatory belief that Brager forged the medical

12  notes.  <u>See</u> <u>King v. United Parcel Service, Inc.</u>, 152 Cal. App. 4th 426, 436 (2007) ("It is

13  the employer's honest belief in the stated reasons for firing an employee and not the

14  objective truth or falsity of the underlying facts that is at issue in a discrimination case.").

15       Because Plaintiff fails to demonstrate that the legitimate, non-discriminatory

16  termination reason offered by Costco was actually pretextual, Plaintiff's disability

17  discrimination claim fails as a matter of law.

18       **C.    Plaintiff's Failure to Accommodate Claim Fails as a Matter of Law**

19       It is unlawful for an employer, with limited exception, "to fail to make reasonable

20  accommodation for the known physical or mental disability of an applicant or employee."

21  Cal. Govt Code § 12940(m)(1).  However, the law does not "require an accommodation

22  that is demonstrated by the employer . . . to produce undue hardship . . . ."  <u>Id.</u>  To

23  establish a prima facie case of failure to accommodate, the plaintiff has the burden of

24  demonstrating: "(1) he has a disability within the meaning of FEHA, (2) he is a qualified

25  individual, meaning that he can, with or without reasonable accommodation, perform the

26  essential functions of his job . . . , and (3) he suffered an adverse employment

27  action . . . ."  <u>Smith v. Sears, Roebuck & Co.</u>, 207 F. Supp. 2d 1031, 1034 (N.D. Cal.

28  2002).  Reasonable accommodation "in the FEHA means (as relevant here) a

1   modification or adjustment to the workplace that enables the employee to perform the

2   essential functions of the job held or desired."  Nadaf-Rahrov v. Neiman Marcus Grp.,

3   Inc., 166 Cal. App. 4th 952, 974 (2008).

4        As discussed supra, Defendant has not established as a matter of law that

5   Laughery lacked knowledge of Brager's disability.  However, the inquiry does not end

6   there.  The only failure to accommodate highlighted by Plaintiff is his termination over the

7   two contested medical absences.  These simply do not suffice.  This Court is quite

8   certain that the legislative authors of § 12940(m) did not envision that an employer

9   needed to accommodate what the management reasonably and in good faith believed

10   were forged medical notes.  It is otherwise uncontested that Defendant granted all of

11   Brager's leave requests as accommodations.  See Reply at 10.  Thus, despite the

12   disputed issue of fact as to Laughery's knowledge, Plaintiff's failure to accommodate

13   claim fails as a matter of law.

14        **D.    Plaintiff's Failure to Engage in an Interactive Process Claim Fails as a**
            **Matter of Law**

15

16        Under FEHA, it is unlawful for an employer "to fail to engage in a timely, good

17   faith, interactive process with the employee or applicant to determine effective

18   reasonable accommodations, if any, in response to a request for reasonable

19   accommodation by an employee or applicant with a known physical or mental disability

20   or known medical condition."  Scotch v. Art Inst. of California, 173 Cal. App. 4th 986,

21   1003 (2009) (quoting Cal. Govt Code § 12940(n)).  "Once the interactive process is

22   initiated, the employer's obligation to engage in the process in good faith is continuous."

23   Id. at 1013.  "Liability hinges on the objective circumstances surrounding the parties'

24   breakdown in communication, and responsibility for the breakdown lies with the party

25   who fails to participate in good faith."  Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th

26   34, 62 n.22 (2006).

27        Plaintiff's vague assertions that Defendant failed to engage in the interactive

28   process are belied by the record.  Plaintiff does not contest that Defendant granted all of

1  his leave requests, even when he was not eligible for FMLA.  See Mot. at 16.  While one

2  could perhaps offer post hoc conjecture as to additional accommodations Costco could

3  have granted Brager, the overwhelming judicial consensus is that interactive process is a

4  two-way street.  See, e.g., Aparicio v. Comcast, Inc., 274 F. Supp. 3d 1014, 1030 (N.D.

5  Cal. 2017); Nadaf-Rahrov, 166 Cal. App. 4th at 984-85.  There is no evidence that

6  Plaintiff sought — and Defendant denied — any additional accommodations; Plaintiff

7  does not even speculate what such accommodations would be.

8       Beyond that, Plaintiff is correct that there is also an obligation on the employer,

9  and although it is reasonable to believe that Laughery knew that Brager suffered a

10  disability requiring occasional leave, the record does not support any conclusion that

11  Defendant knew that Brager suffered from depression and anxiety specifically.  It would

12  be unreasonable to demand that Defendant, without knowledge of Plaintiff's specific

13  afflictions, to go beyond granting all leave requests without any prompting from Plaintiff

14  as to additional support required.  Thus, Defendant's Motion is GRANTED as to

15  Plaintiff's interactive process claim.

16       **E.    Plaintiff's Retaliation Claim Fails as a Matter of Law**

17       The FEHA makes it unlawful for an employer "to discharge, expel, or otherwise

18  discriminate against any person because the person has opposed any practices

19  forbidden under this part or because the person has filed a complaint, testified, or

20  assisted in any proceeding under this part."  Scotch, 173 Cal. App. 4th 986, 1003 (2009)

21  (quoting Cal. Gov't Code § 12940(h)).  "[I]n order to establish a prima facie case of

22  retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected

23  activity,' (2) the employer subjected the employee to an adverse employment action, and

24  (3) a causal link existed between the protected activity and the employer's action."

25  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042, 116 P.3d 1123, 1130 (2005)

26  (collecting authorities).

27       "Brager pleads retaliation on two bases: his medical leaves and his complaints of

28  sexual orientation harassment."  Opp'n at 14.  Defendant contests both.  First, Costco

21

1   states that Brager cannot establish a link between his protected activity (medical leaves

2   or complaints of sexual orientation harassment) and his termination, particularly given

3   Laughery's lack of knowledge that Brager had made any sexual orientation harassment

4   complaints.  Mot. at 17; see Laughery Declaration ¶¶ 15-16.  Additionally, Defendant

5   insists that it was violation of LOA policy that caused Brager's termination, not the

6   medical leaves standing alone.  Mot. at 17.

7        Plaintiff responds that Laughery was not the only person involved in Brager's

8   termination decision, so even assuming he did not hold discriminatory animus against

9   Plaintiff, the obligation on Defendant at this stage is to demonstrate that all Defendant

10  managers with say in the decision held no such animus.  See Opp'n at 14-15 (citing

11  Reeves v. Safeway Stores, Inc., 121 Cal. App. 4th 95, 108 (2004)).  Here, Plaintiff avers

12  that Carmen Colunga ("Colunga"), a previous manager, influenced Laughery's

13  termination decision, and Colunga held animus toward Brager as demonstrated by her

14  decision to "target him and harass him herself."  Opp'n at 15.[8]

15       Laughery, however,  insists that former managers Colunga and Steve

16  Chamberlain ("Chamberlain") offered no input on the decision to terminate Brager.

17  Reply, Supplemental Declaration of Laughery, ¶ 4.  This is supported by Colunga's own

18  deposition testimony that she was unaware Brager had even been terminated, and she

19  had transferred to another warehouse months prior.  Reply at 9.  Chamberlain, for his

20  part, also no longer worked at the store when Brager was terminated, and Plaintiff's

21  speculation that he influenced the decision is too vague and unsupported to create a

22  triable issue of fact.

23       McKay, the Costco manager that authorized Laughery's initial decision to

24  terminate Plaintiff, similarly denied any knowledge of Brager's sexual orientation

25  harassment claims, nor that his medical leaves were tied to disabling depression or

26        [8] Plaintiff also contends again that, regarding the medical leaves, there are sufficient questions
27  surrounding Costco's "legitimate, non-discriminatory business reason for terminating Brager" (the
    ostensibly forged notes) to survive summary judgment.  Opp'n at 16.  Because this Court has already
28  recognized above that there existed a legitimate, non-discriminatory reason for the termination, only
    Plaintiff's first argument is addressed.

1  anxiety.  Reply, Declaration of John McKay, ¶¶ 4-5.  Beyond conjecture, Plaintiff offers

2  no evidence to the contrary.  See Kerr v. Rose, 216 Cal. App. 3d 1551, 1563-64 (1990)

3  ("[I]t is well established that a plaintiff's suspicions of improper motives . . . primarily

4  based on conjecture and speculation are not sufficient to raise a triable issue of fact to

5  withstand summary judgment.") (citation omitted) (omission original).  Finally, Plaintiff

6  offers that the two corporate managers who initially told Laughery to reinstate Brager but

7  then changed their minds — Paul Cano and Jeff Abadir — perhaps had knowledge of

8  Brager's sexual orientation harassment complaints.  Defendant replies only that neither

9  had any influence over the decision.  Reply at 9 n.12.  Indeed, it would be peculiar if

10  Cano and Abadir held such knowledge, fostered discriminatory animus about it, told

11  Laughery to reinstate Brager, and then changed their minds under the pretext of news

12  that the medical notes were inauthentic.  This Court will not entertain such exceptional

13  theories without some evidence in support.  Accordingly, Defendant's Motion is

14  GRANTED as to this claim as well.

15       **F.**    **Plaintiff's Derivative Claims**

16          **1.**    **The Failure to Prevent Discrimination and Retaliation**

17       FEHA makes it unlawful for an employer "to fail to take all reasonable steps

18  necessary to prevent discrimination and harassment from occurring."  Scotch,

19  173 Cal. App. 4th at 1003 (citing Cal. Gov't Code § 12940(k)).  A plaintiff pursuing such a

20  claim must show three elements: "1) plaintiff was subjected to discrimination,

21  harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent

22  discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer

23  injury, damage, loss or harm."  Aparicio v. Comcast, Inc., 274 F. Supp. 3d 1014, 1030-31

24  (N.D. Cal. 2017) (quoting Leland v. City & Cty. of San Francisco, 576 F. Supp. 2d 1079,

25  1103 (N.D. Cal. 2008)).[9]

26  _____

27        [9] "Examples of reasonable steps employers may take to prevent discrimination include promptly investigating the discrimination claim, developing appropriate sanctions, and implementation of effective procedures to handle discrimination-related complaints."  Ayala v. Frito Lay, Inc., 263 F. Supp. 3d 891, 906

28  (E.D. Cal. 2017) (citing Cal. Code Regs. § 11019(b)).

1    Plaintiff alleged in his Complaint that "Defendants failed to take all reasonable

2    steps to prevent discrimination, harassment and retaliation against Plaintiff from

3    occurring, and failed to take immediate corrective action to remedy the discrimination;

4    harassment, and retaliation, in violation of FEHA . . . ." Compl. ¶ 85.  Specifically,

5    despite Plaintiff's notice of ongoing harassment, "Defendants failed to take any

6    disciplinary measures to prevent and/or remedy the harassment, discrimination and

7    retaliation against Plaintiff, such as issuing a formal warning, providing counseling, or

8    imposing probation, suspension, or termination, or conducting a prompt and thorough

9    investigation . . . ."  See id. ¶ 86.  Defendant asserts that this claim is "entirely derivative"

10   of Plaintiff's underlying claims, "and thus rise and fall with those claims."  Mot. at 18.

11   As determined above, there are triable issues of fact as to if Costco failed to

12   prevent ongoing harassment of Plaintiff from his coworkers.  Accordingly, the Motion is

13   DENIED as to the sixth cause of action.

14                    **2.    Wrongful Termination**

15   In light of the above, Plaintiff's wrongful termination claim must fail as a matter of

16   law.  See Sneddon v. ABF Freight Sys., 489 F. Supp. 2d 1124, 1131 (S.D. Cal. 2007)

17   (finding the same result because wrongful termination is a derivative claim).

18                    **3.    Declaratory Relief**

19   Plaintiff's declaratory relief claim is also derivative.  See Roman v. BRE

20   Properties, Inc., 237 Cal. App. 4th 1040, 1055 (2015).  However, because this Motion is

21   denied in relevant part as to harassment in the workplace, Defendant's Motion is

22   DENIED as to declaratory relief as well.[10]

23        **G.    Punitive Damages**

24   Plaintiff's prayer for punitive damages is derivative of the claims for sexual

25   orientation harassment (Compl. ¶ 49); discrimination (id. ¶ 65); failure to accommodate

26   _____

27        [10] Defendant's assertion as to Plaintiff's lack of standing rests only on one unreported case that does not provide the authority to which Defendant attributes it.  See Mot. at 18 n.2 (citing Markowitz v.

28   United Parcel Serv., Inc., No. SACV 15-1367 AG (DFMx), 2016 WL 3598728, at *8 (C.D. Cal. July 1, 2016)).

1   (id. ¶ 72); failure to engage in interactive process (id. ¶ 82); failure to prevent

2   discrimination, harassment, and retaliation (id. ¶ 90); retaliation (id. ¶ 101); and wrongful

3   termination (id. ¶ 109).  Plaintiffs are entitled to punitive damages if they can show by

4   clear and convincing evidence that the defendants were guilty of malice, fraud, or

5   oppression. Cal. Civ. Code § 3294.  Based on Plaintiff's allegations as to the sexual

6   orientation harassment he endured and management ignored, this claim is not ripe for

7   summary adjudication.  In addition, whether to award punitive damages is generally a

8   question for the jury.  See, e.g., Johnson v. Monsanto Co., 52 Cal. App. 5th 434, 455

9   (2020).  Accordingly, the Court DENIES the Motion as to punitive damages.

10

11                                    **CONCLUSION**

12

13          For the foregoing reasons, Defendant's Motion. ECF No. 8, is GRANTED in part

14   and DENIED in part.

15          1.      The Motion is DENIED as to the following claims: One (declaratory relief);

16   Two (sexual orientation harassment); Six (failure to prevent harassment); and punitive

17   damages.

18          2.      The Motion is GRANTED as to the following claims: Three (disability

19   discrimination); Four (failure to accommodate); Five (failure to engage in the interactive

20   process); Seven (retaliation); and Eight (wrongful termination).

21          **IT IS SO ORDERED.**

22   **Dated:  September 27, 2021**

23

24   _____
     MORRISON C. ENGLAND, JR.
25   SENIOR UNITED STATES DISTRICT JUDGE

26

27

28